IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRENISEAN BERNARD and CAROLYN BERNARD, individually and on behalf of all other Illinois citizens similarly situated, | ) ) ) ) ) | Case No. 1:22-cv-06418 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Jury Trial Demanded |
| DHALIWAL LABS NORTH, LLC, | ) ) | |
| Defendant. | | |

**CLASS ACTION COMPLAINT**

NOW COME the Plaintiffs, TRENISEAN M. BERNARD and CAROLYN BERNARD, as proposed class representatives, by and through their counsel, James C. Vlahakis, and assert the following Class Action claims against Defendant DHALIWAL LABS NORTH, LLC:

**I. Introduction**

1. Plaintiff Trenisean Bernard is a citizen of Illinois and resides in the Northern District of Illinois.

2. Plaintiff Carolyn Bernard is a citizen of Illinois and resides in the Northern District of Illinois.

3. Defendant DHALIWAL LABS NORTH, LLC ("Defendant") is a Delaware corporation, file no. 5921399.

4. Defendant's State of Illinois incorporation file no. is 05500067.

5. Defendant operates a Bedford Park, Illinois manufacturing plant and maintains a headquarters in Dallas, Texas.

6. Defendant's registered agent for the State of Illinois is Steven J. Thayer, with an address of 191 N. Wacker Dr. Suite 2300, Chicago IL 60606.

1

7. On information and belief, DHALIWAL LABS ILLINOIS, LLC is the sole manager of Defendant.

8. Plaintiff Trenisean Bernard is a former employee of Defendant.

9. Plaintiff Carolyn Bernard is a former employee of Defendant.

10. Defendant has utilized what it called a Biometric Time Clock system to scan employees' fingerprints when employees utilized Defendant's Biometric Time Clock system.

11. Defendant required both Plaintiffs to utilize their fingerprints or thumbprints to access Defendant's time clocking system.

12. Plaintiffs, on their own behalf, and on behalf of putative class members, assert that Defendant's use of its so-called Biometric Time Clock system violated their rights as codified by the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA").

**II.     Summary of the Illinois Biometric Information Privacy Act**

13. BIPA was enacted in 2008 for the purpose of addressing a "very serious need for protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Session No. 276.

14. BIPA's express Legislative Findings provide as follows:

> (a) The use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings.
>
> (b) Major national corporations have selected the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias.
>
> (c) Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for

>identity theft, and is likely to withdraw from biometric-facilitated transactions.
>
>(d) An overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information.
>
>(e) Despite limited State law regulating the collection, use, safeguarding, and storage of biometrics, many members of the public are deterred from partaking in biometric identifier-facilitated transactions.
>
>(f) The full ramifications of biometric technology are not fully known.
>
>(g) The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

740 ILCS 14/5.

15. BIPA was enacted in 2008 after Pay By Touch, the largest fingerprint scan system in Illinois, filed for bankruptcy and the bankruptcy court approved the sale of Pay By Touch's database containing Illinois customers' biometric information. See Ill. House Transcript, 2008 Reg. Sess. No. 276 at 113.

16. The Illinois General Assembly was troubled by the use of "finger-scan technologies at grocery stores, gas stations, and school cafeterias" and the use of "biometric-facilitated financial transactions." 740 ILCS 14/5(b).

17. The Illinois General Assembly was also worried that consumers' fears about the collection and use of their biometric data were inadequately addressed by existing law, and that these fears might cause Illinois residents to avoid transactions facilitated with biometric information that could be used to identify them. 740 ILCS 14/5(d).

18. The Illinois General Assembly also recognized that unlike other so-called personal identifiers, such as social security numbers, biometrics are biologically unique to each individual and cannot be altered or changed once compromised, such that, once

3

this sensitive data is compromised, an individual is at heightened risk for identity theft. 740 ILCS 14/5 (c).

19. In 2019, the Illinois Supreme Court wrote that BIPA was enacted to preserve an individual's right to privacy and control over his/her/their biometric data:

> Through the Act, our General Assembly has codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information. The duties imposed on private entities by section 15 of the Act (740 ILCS 14/15 (West 2016)) regarding the collection, retention, disclosure, and destruction of a person's or customer's biometric identifiers or biometric information define the contours of that statutory right. Accordingly, when a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach.
>
> * * *
>
> The Act vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent. . . . When a private entity fails to adhere to the statutory procedures, as defendants are alleged to have done here, "the right of the individual to maintain his or her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized." This is no mere "technicality." The injury is real and significant.

*Rosenbach v. Six Flags Ent. Corp.*, 432 Ill. Dec. 654, 129 N.E.3d 1197, 1206 (Ill. 2019)).

20. BIPA defines "Biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

21. BIPA defines "Biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

22. BIPA prohibits private entities from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's biometric information unless the private entity: (1) informs that person in writing that identifiers and information will be collected and/or stored; (2) informs the person in writing of the specific purpose and

length for which the identifiers or information is being collected, stored or used; (3) receives a written release from the person for the collection of that data; and (4) publishes publicly available written retention schedules and guidelines for permanently destroying said data. *See* 740 ILCS 14/15(a) and (b).

23. As detailed below, within the past five years, Defendant's Biometric Time Clock system has required its employees to submit and use their fingerprints and/or thumbprints when employees check in and out using a time-clocks. Hereafter Defendant's "Technology".

24. Defendant's Technology is subject to the requirements of BIPA.

25. Upon information and belief, Defendant's Technology has collected, captured and/or received the unique "biometric identifiers" and "biometric information" Plaintiffs and putative class members.

26. As detailed below, the Technology utilized by Defendant required it to obtain informed written consent from Plaintiffs and putative class members *before* Defendant was able to collect, capture or receive the biometric identifiers and/or biometric information of Plaintiffs and putative class members.

27. Section 20(1) of BIPA provides that "[a] prevailing party may recover for each violation: … (1) against a private entity negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater". 740 ILCS 10 14/20(1).

28. Section 20(1) of BIPA provides "[a] prevailing party may recover for each violation: … (a) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater". 740 ILCS 10 14/20(2).

5

29. In particular, as detailed below, this putative Class Action Complaint alleges that Defendant has violated Sections 15(b) and 15(d) of BIPA.

### III. Jurisdiction and Venue

30. Defendant is incorporated Delaware.

31. Defendant's headquarters and principal place of business are located in Dallas, Texas.

32. Each named Plaintiff is a citizen and resident of the State of Illinois.

33. The damages sought by each named Plaintiff exceeds $75,000 where BIPA.

34. Given the length of Plaintiffs' employment with Defendants, and number of times each Plaintiff provided their biometric information to use Defendant's Technology, and the statutory penalties provided by BIPA, each Plaintiff could recover more than $75,000.00 in statutory damages by merely utilizing Defendant's Technology a minimum of seventy-five (75) times.

35. The Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 on the basis of diversity jurisdiction.

36. Additionally, the Class Action Fairness Act ("CAFA"), codified at 28 U.S.C. § 1332(d), provides jurisdiction on the basis of a diversity of citizenship, if the amount in controversy exceeds $5,000,000.

37. CAFA, in relevant part, states as follows:

> (2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—
>
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant[.]
>
> ***
>
> (6) In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

28 U.S.C. §§ 1332(d)(2), 1332(d)(6).

38. Plaintiffs have satisfied the requirements of Section 1332(d)(5)(B) of CAFA because during the time period that Plaintiffs were employed, Defendant had or has employed more than 100 employees who have utilized Defendant's Technology in violation of BIPA.

39. As discussed in the previous Section, Plaintiffs are citizens of the State of Illinois and Defendant is a Delaware corporation with its headquarters and principal place of business located in Dallas, Texas.

40. Based upon this diversity of citizenship, Plaintiffs have satisfied Section 1332(d)(2).

41. This is a putative class action where liquidated damages for *each* violation of BIPA may result in liquidated damages of $1,000 and up to $5,000.

42. This Court has jurisdiction over this civil pursuant to Section 1332(d) of CAFA because there are more than 100 Plaintiff Class Members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and Defendant and Plaintiffs are citizen of different states.

43. CAFA jurisdiction is satisfied pursuant to Sections 1332(d)(2) and (6) of CAFA because even if a trier of fact determines that Defendant negligently violated BIPA, liability for 5,001 individual violations would exceed $5,000,000 in damages.

44. This Court has personal jurisdiction over Defendant because it maintains a facility in this judicial district and its business practices with this judicial district lead to the below asserted violations of BIPA.

45. 28 U.S.C. § 1391(b)(2) provides that "[a] civil action may be brought in – (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"

46. Venue is proper in this judicial district, a substantial part of the events or omissions giving rise to Defendant's violations of BIPA took place within the State of Illinois and this judicial district.

47. Venue is also proper in this judicial district because Plaintiffs are citizens of the State of Illinois and they seek to vindicate their rights as provided by Illinois law.

48. Further, venue is proper in this judicial district because Defendant's conduct has harmed Plaintiffs and putative class members who are all citizens of the State of Illinois and Plaintiffs live within the confines of the Northern District of Illinois.

### IV. Class Action Allegations

49. The proposed Classes in each Count set forth below are so numerous that the individual joinder of all members is impracticable.

50. Common questions of law and fact exist as a result of Defendant's violations of BIPA.

51. Plaintiffs' claims are typical of the claims of putative class members.

52. The defenses that Defendant may assert against Plaintiffs are typical of the defenses that Defendant may assert against putative class members.

53. Plaintiffs will fairly and adequately protect the interests of the putative class members as Plaintiffs seek to vindicate their rights afforded by BIPA and they seek to obtain declaratory, injunctive and monetary relief for all impacted class members.

54. Plaintiffs' counsel will fairly and adequately protect the interest of the putative class members. *See, e.g., Molinari v. Fin. Asset Mgmt. Sys., Inc.*, 2021 U.S. Dist. LEXIS 235401, *3 (N.D. Ill. Nov. 22, 2021) (appointing attorney James C. Vlahakis as provisional class counsel in putative class action involving the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act, with final approval being granted by Dkt. 134); *In re Apple Inc. Device Performance Litig.*, 2021 U.S. Dist. LEXIS

50550, 2021 WL 1022867 (N.D. Cali. Mar. 17, 2021) (granting final approval of $310-$500 million dollar settlement where Mr. Vlahakis was appointed the Steering Committee (Dkt. 99) of a class action involving Apple's alleged practice of "throttling" down the performance of older model iPhones).

55. The proposed Classes should be certified to avoid inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

56. The proposed Classes should be certified to avoid adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

57. The proposed Classes should be certified because Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

58. The proposed Classes should be certified because questions of law or fact common to class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating the present controversy.

59. The proposed Classes are ascertainable from Defendant's records.

60. The proposed Classes are limited by the applicable statute of limitations.

**V. Causes of Action**

**Count I – Violations of Section 15(b) of BIPA**

61. Plaintiffs allege and reassert Paragraphs 1-60 as if fully set forth above:

62. Section 15(b) of BIPA requires private entities to obtained informed written consent from persons before a private entity can obtain their biometric identifiers and/or biometric information.

63. BIPA defines "[w]ritten release" as "informed written consent". 740 ILCS 14/10.

64. Section 15(b) of BIPA specifically states that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first" takes the following actions:

> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

65. Section 15(b) ensures that "consumers understand, before providing their biometric data, how that information will be used, who will have access to it, and for how long it will be retained." *Id.*

66. Informed-consent is the "heart of BIPA." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020).

67. The failure to obtain consent before collecting an individual's biometric data necessarily inflicts an Article III injury. *Bryant*, 958 F.3d at 619, 624, 626 (comparing a violation of section 15(b) to "an invasion of [an individual's] private domain, much like an act of trespass").

68. As described below, Defendant violated Section 15(b) of BIPA because it collected Plaintiffs' biometric information without first obtaining informed written consent from Plaintiffs.

69. Defendant violated of Section 15(b)(3) of BIPA by failing to obtain a written release executed by Plaintiffs and putative class members before Defendant collected and/or used their "biometric identifiers" and/or "biometric information". 740 ILCS 14/15(b)(3).

70. Violations of Section 15(b) of BIPA result in concrete injuries:

> As the Illinois Supreme Court recognized in *Rosenbach*, the informed-consent regime laid out in section 15(b) is the heart of BIPA. The text of the statute demonstrates that its purpose is to ensure that consumers understand, before providing their biometric data, how that information will be used, who will have access to it, and for how long it will be retained. The judgment of Illinois's General Assembly is that the sensitivity of biometric information and the risk of identity theft or other privacy or economic harm that may result from its dissemination, necessitates that people be given the opportunity to make informed choices about to whom and for what purpose they will relinquish control of that information. Compass's failure to abide by the requirements of section 15(b) before it collected Smart Market users' fingerprints denied Bryant and others like her the opportunity to consider whether the terms of that collection and usage were acceptable given the attendant risks.
>
> This was not a failure to satisfy a purely procedural requirement. Rather, as in Robertson, Compass withheld substantive information to which Bryant was entitled and thereby deprived her of the ability to give the informed consent section 15(b) mandates. Equipped with the missing information, she may have chosen not to use the vending machines and instead brought her own lunch or snacks. Or she may have opted for the convenience of the machines. She did not realize that there was a choice to be made and what the costs and benefits were for each option. This deprivation is a concrete injury-in-fact that is particularized to Bryant. She thus meets the requirements for Article III standing on her section 15(b) claim.

*Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020).

71. The failure to obtain informed consent before collecting, capturing and/or receiving an individual's biometric data necessarily inflicts an Article III injury. *Bryant*,

958 F.3d at 619, 624, 626 (comparing a violation of Section 15(b) to "an invasion of [an individual's] private domain, much like an act of trespass").

72. Defendant's collection, use, modification, monetization and/or storage of Plaintiff and putative class members' "biometric identifiers" and/or "biometric information" - without their informed written consent – has violated Section 15(b).

73. As explained above, Defendant collected, captures and/or received the "biometric identifiers" and/or "biometric information" of Plaintiffs and putative class members in violation of the prohibitions and requirements set forth by BIPA.

74. As explained above, Defendant did not obtain the informed written consent of Plaintiffs and putative class members to collect, use, modify, sell and/or store their "biometric identifiers" and/or "biometric information".

75. In summary, Defendant violated BIPA by collecting, using, modifying and/or storing the "biometric identifiers" and/or "biometric information" of Plaintiffs and putative class members without their informed written consent.

76. Plaintiff and putative class members have suffered damages in the form of liquidated damages and provided by 740 ILCS 14/20(1)-(2).

77. The proposed Section 15(b) Class is defined as:

> All current and former employees of Defendant who had their "biometric information" and/or "biometric identifiers" collected, captured and/or otherwise obtained by Defendant's user of fingerprint and/or thumbprint Technology *without* Defendant having first receive written release executed by current and former employees.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court provide Plaintiffs and putative class members with the following relief:

   a. Liquidated damages for negligent violations of Section 15(b);
   b. Liquidated damages for intentional and/or reckless violations of Section 15(b);
   c. Reasonable attorney's fees and costs;

    d. Enjoining Defendant from further violations of Section 15(b);and

    e. Certifying the proposed Class set forth above.

**Count II –Violations of Section 15(d) of BIPA**

78. Plaintiffs allege and reassert Paragraphs 1-60 as if fully set forth above:

79. Section 15(d) of BIPA prohibits private entities from disclosing, redisclosing, or otherwise disseminating a person's biometric identifier or biometric information with first obtaining informed written consent of the subject.

80. In full, Section 15(d) of BIPA states as follows:

> No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:
>
> (1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure;
>
> (2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or the biometric information or the subject's legally authorized representative;
>
> (3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or
>
> (4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

See, 740 ILCS 14/15(d).

81. As described below, Defendant violated Section 15(d) of BIPA because it has disclosed and/or otherwise disseminated Plaintiffs' biometric identifier and/or biometric information *without* their informed written consent.

82. Defendant disclosed and/or otherwise disseminated Plaintiffs' biometric identifier and/or biometric information to Paycom and did so without Plaintiffs' informed written consent.

83. Defendant violated Section 15(d) of BIPA because it utilized Technology that has captured the biometric identifiers and/or biometric information (hereafter "Biometric(s)") of Plaintiffs and putative class members without first obtaining the informed written consent of Plaintiffs and putative class members.

84. Defendant failed to properly disclose to Plaintiffs and putative class members that Defendant was collecting the Biometrics of Plaintiffs and putative class members and transmitting their Biometrics to Paycom, a third-party vendor.

85. Defendant violated Section 15(d) of BIPA by obtaining and/or collecting the unique "biometric identifier" or "biometric information" of Plaintiffs and putative class members – without their informed written consent.

86. For example, Defendant has violated Section 15(d) of BIPA by disclosing, redisclosing, and/or otherwise disseminating Plaintiffs and putative class members' "biometric identifiers" and/or "biometric information" to third-parties - without the informed written consent Plaintiffs and putative class members.

87. The Seventh Circuit has held that the unlawful disclosure of biometric data invades an individual's private domain "just as surely as an unconsented collection or retention does." *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1161 (7th Cir. 2021).

88. The unlawful disclosure of an individual's biometric data inflicts an injury that satisfies Article III. *Id.*

89. The proposed 15(d) Class is defined as:

> All current and former employees of Defendant who had their "biometric information" and/or "biometric identifiers" collected, captured and otherwise obtained by Defendant's user of fingerprint and/or thumbprint Technology *without* Defendant having first receive written release executed by current and former employees where Defendant thereafter disclosed, redisclosed, or otherwise disseminated class members' – "biometric information" and/or

14

"biometric identifiers" without the consent or authorization of these employees.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court provide Plaintiffs and putative class members with the following relief:

a. Liquidated damages for negligent violations of Section 15(d);
b. Liquidated damages for intentional and/or reckless violations of Section 15(d);
c. Reasonable attorney's fees and costs;
d. Enjoining Defendant from further violations of Section 15(d); and
e. Certifying the proposed Class set forth above.

### **Jury Demand**

Plaintiffs demand a jury trial.

*/s/ James C. Vlahakis*
James C. Vlahakis
Senior Counsel
Sulaiman Law Group, Ltd.
2500 S. Highland Ave. Suite 200
Lombard, IL 60148
630-581-5456
Fax: 630-575-8188
jvlahakis@sulaimanlaw.com

Dated: 11/16/2022